UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE JANZ CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 23-11025-FDS |
| v. | ) ) ) | |
| PHILIPS NORTH AMERICA LLC d/b/a PHILIPS HEALTHCARE, a subsidiary of KONINKLIJKE PHILIPS N.V., | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

SAYLOR, C.J.

This is an action arising out of the termination of a contract between The Janz Corporation and Philips North America. The complaint alleges that Philips breached the implied covenant of good faith and fair dealing by terminating the agreement in retaliation for Janz's repeated raising of government product-certification concerns. It alleges further that the termination violated Massachusetts public policy and Mass. Gen. Laws ch. 93A. Jurisdiction is based on diversity of citizenship.

Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

**I.       Background**

The facts are set forth as alleged in the complaint unless otherwise noted.

A.     **Factual Background**

The Janz Corporation is a service-disabled veteran-owned small business that provides medical equipment and services to certain federal government agencies. (Compl. ¶ 9). It is organized under the laws of Michigan, and its principal place of business is Columbus, Ohio. (*Id.*).

Philips North America LLC d/b/a Philips Healthcare is a limited liability company that is wholly owned by Koninklijke Philips N.V., a Dutch corporate entity. (Corp. Disclosure, ECF No. 11).

In February 2014, Janz and Philips entered into a reseller agreement. (*Id.* ¶ 18). Under the agreement, Janz was authorized to promote, sell, and support certain Philips products, including the IntelliVue MP2 Mobile Patient Monitor ("MP2"). (*Id.* ¶¶ 15, 18).

The MP2 is a portable medical-monitoring device regularly used on commercial and government aircraft. (*Id.* ¶ 15). For use on government aircraft, such devices must be certified for airworthiness, which requires government-sanctioned review, testing, and approval of all MP2 component parts to ensure that they (1) will work in the air, (2) will not obstruct the operation of the aircraft, and (3) will not enable hostile detection. (*Id.* ¶ 16).

The complaint alleges that the agreement was renewable annually and was renewed each year from 2015 to 2018. (*Id.* ¶ 19).[1] The agreement provided that either party "may terminate this Agreement . . . without cause at any time upon thirty (30) days prior written notice to the other Party." (*Id.* ¶ 18).

In late 2014, Philips notified Janz it was modifying the MP2. The modification would

---

[1] The parties dispute whether there were a series of one-year term contracts or a renewed contract. (Mem. at 3 n.3). For present purposes, the distinction is not relevant.

2

mean that the MP2 was no longer certified airworthy for government customers. (*Id.* ¶ 21). In response, Janz asked Philips about recertification and airworthiness. In subsequent months, the parties exchanged communications about recertification and airworthiness, including an e-mail on February 6, 2015, in which a Philips senior marketing manager stated it was unclear if the MP2 sales would justify the expense of re-testing. (*Id.* ¶¶ 22-27).

In June 2015, Janz received an order from the Army 18th Airborne Corps at Fort Bragg, North Carolina, for 42 certified MP2s. (*Id.* ¶ 28). Philips allegedly agreed to fill the order with airworthy-certified MP2s only if Janz agreed to accept an additional 90 airworthy-certified MP2s. Janz accepted. (*Id.*). On July 7, 2015, Philips allegedly acknowledged that it was struggling to stock orders on time because of the requirements for producing airworthy MP2s. (*Id.* ¶ 29). On July 8, 2015, Philips informed Janz it would sell airworthy-certified MP2s in a "bundle" that would be available in October 2015 to satisfy Janz's contract with its government customer. (*Id.* ¶ 31).

On August 4, 2015, Janz entered into a five-year agreement with the government to provide approved Philips products, including MP2s. (*Id.* ¶ 20).

On September 18, 2015, Janz sold four MP2s to a United States Coast Guard unit in Atlantic City, New Jersey. (*Id.* ¶ 36). According to the complaint, a Philips employee traveled on site to configure the MP2s for the Coast Guard's use and discovered that the MP2s provided by Philips were the remodeled devices that lacked airworthiness certification. The Philips employee also suggested that it was likely that Janz's order for the 18th Airborne included uncertified MP2s. (*Id.*).

On November 20, 2015, Janz e-mailed a senior manager of Philips to condition the purchase order for the 18th Airborne order on confirmation of additional time to pay for the 90

units, the option to return part or all of the units without penalty, and an assurance that Philips would only supply airworthy-certified MP2s. (*Id.* ¶ 37). The manager responded, in part, "[D]on't get caught short not having enough of these units to fulfill [the] order when they do happen. Mind you no other reseller will know about the airworthy ones." (*Id.* ¶ 38).

According to the complaint, a Philips interoffice memorandum confirmed that Philips had been supplying orders from government customers with MP2s that were not certified for airworthiness. (*Id.* ¶ 39). The memorandum stated that Philips had developed a "new 6N Number 867059/M8102AM for the Intellivue MP2 Military version" that was different from the "currently shipping MP2 and MP2 Military version which is based on a HW revision that includes the previous main board and power board revision (Military tested version)." (*Id.*).

On August 4, 2017, Janz asked for confirmation whether the MP2M was certified as airworthy, noting that the Navy had expressed skepticism of its certification status after discovering previously purchased MP2s may not have been certified. (*Id.* ¶ 41).[2] According to the complaint, Philips did not respond. (*Id.*).

On August 14, 2017, Philips contracted with Janz to certify the Lumify Ultrasound product as airworthy, which Janz accomplished. (*Id.* ¶ 55). The complaint alleges Philips had previously provided Janz a "Letter of Supply" for a High Tech Medical Equipment contract with government customers, under which Philips would supply ultrasound products, including the Lumify, for five years. Janz became the stocking distributor for Lumify products. (*Id.*).

Janz also worked with the Air Force to retest the MP2M for airworthiness. On September 26, 2018, the MP2M was certified airworthy. (*Id.* ¶ 42). Shortly after that certification, Philips allegedly replaced internal components of MP2M, which invalidated the

---

[2] The MP2M appears to be the "Intellivue MP2 Military version." (*Id.* ¶ 39).

4

certification. (*Id.* ¶ 43). According to the complaint, Janz "confronted Philips immediately upon learning of its remodeling of the MP2M." (*Id.* ¶ 44). Philips did not explain its conduct. (*Id.*).

In October 2018, Philips notified Janz that it would no longer sell MP2 products to Janz for resale to any customer and that it would not renew the Reseller Agreement for 2019 or 2020. (*Id.* ¶ 44). The complaint alleges that the termination was in retribution for Janz's repeated insistence that MP2 products be certified as airworthy. (*Id.* ¶ 45).

On November 30, 2018, Philips sent Janz a modification of the reseller agreement that removed patient-monitoring products from the list of products that Janz could provide to customers. (*Id.* ¶ 52). The complaint alleges that Janz had contracts in place for such products and when it raised that issue, Philips removed "nearly every other product" from the authorized list in response. (*Id.* ¶ 53). Philips also rescinded the letter of supply that allowed Janz to sell ultrasound products, leaving Janz with approximately $400,000 of Lumify inventory on hand. (*Id.* ¶ 56). It further alleges that Janz was unable to honor contracts with its government customers, depriving Janz of close to $1 million in profits from the open purchase orders. (*Id.* ¶ 54).

On December 17, 2018, Janz requested that Philips provide a written explanation of the reason it removed the MP2 from the authorized products for resale. A Philips employee responded that it was a "strategic decision to focus on other areas," and that it terminated the reseller agreement because of late payments by Janz. (*Id.* ¶ 46).

Philips officially terminated the reseller agreement on January 24, 2019. (*Id.* ¶ 48). The complaint alleges that the termination without an acknowledgement of the reasoning caused it significant reputational harm. (*Id.* ¶¶ 8, 60).

**B.     Procedural Background**

On September 10, 2019, Rick Finsterbusch and Brian Healey, who are principals of Janz,

filed a *qui tam* action against Philips in the District of Massachusetts captioned *United States ex rel. Rick Finsterbusch and Brian Healey v. Philips North America LLC d/b/a Philips Healthcare, a subsidiary of Koninklijke Philips N.V.*, concerning Philips's conduct in connection with the MP2s. (*Id.* ¶ 62). The government and Philips entered a settlement to resolve that action. (*Id.* ¶ 63).

On May 9, 2023, Janz filed the complaint in this action. The complaint alleges three counts: (1) breach of implied covenant of good faith and fair dealing; (2) wrongful termination; and (3) violation of Mass. Gen. Laws ch. 93A. Philips has moved to dismiss all counts for failure to state a claim.

## II.  Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.     Analysis

#### A.     Breach of Implied Covenant of Good Faith and Fair Dealing

Count 1 alleges breach of the implied covenant of good faith and fair dealing.  Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.  *See Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).[3]  That covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (quoting *Druker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976)).  "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."  *Uno Rests.*, 441 Mass. at 385.

A party may breach the covenant without breaching any express term of the contract.  *Marx v. Globe Newspaper Co.*, 2002 WL 31662569, at *5 (Mass. Super. Nov. 26, 2002); *see Fortune v. National Cash Register Co.*, 373 Mass. 96, 101, 105 (1977).  Otherwise, the implied covenant would be a mere redundancy.  The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance.  *Marx*, 2002 WL 31662569, at *5-6; *Larson v. Larson*, 37 Mass. App. Ct. 106, 110 (1994).

However, the requirement of good faith performance is circumscribed by the obligations in the contract.  *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  Thus, the covenant may

---

[3] There is apparently no dispute that Massachusetts law applies to the contract at issue.  (Compl. at ¶¶ 66-86; Mem. at 4 n.4).  Defendant represents that the 2018 Agreement provides a choice of law clause selecting Massachusetts law for any disputes related to the agreement.  (Mem. at 4 n.4).

not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *Uno Rests.*, 441 Mass. at 385-386. Nor does the covenant apply where the defendant has exercised an express contractual power in good faith—that is, in a manner that comports with the parties' reasonable expectations as to performance. *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005) (collecting cases).

To establish a breach of the implied covenant, "a plaintiff must prove that there existed an enforceable contract between the two parties and that the defendant did something that had the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract." *FabriClear, LLC v. Harvest Direct, LLC*, 481 F. Supp. 3d 27, 35 (D. Mass. Aug. 24, 2020) (quoting *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 388 (D. Mass. 2012)).

The complaint here alleges that Philips breached the implied covenant by its conduct, including the termination of the reseller agreement, in retaliation for Janz's insistence on certifications of airworthiness. (Compl. ¶¶ 68-69). Philips contends that the express terms of the contract permitted termination without cause; that Janz's alleged lost profits were not plausibly caused by the termination of the reseller agreement eight days before the end of its term; and that Janz contractually waived any right to recover lost profits.

Both parties acknowledge that "under some circumstances a party to a contract is not free to terminate it according to its terms." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 298 (1980). (Opp. at 8; Reply at 3). "In determining whether a party violated the implied covenant of good faith and fair dealing, we look to the party's manner of performance." *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570 (2010) (citing *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005). Plaintiff has the burden of showing lack of good faith, which can be inferred from the totality of the circumstances. *Id.*; *Nile v. Nile*, 432 Mass. 390, 389-99 (2000).

Here, the complaint alleges that Philips terminated the reseller agreement in retaliation for Janz's repeated insistence on certification for the MP2 products and that it reduced the products Janz was authorized to sell, resulting in economic damages. (Compl. ¶¶ 54-58, 68). That is sufficient to state a plausible claim for retaliatory conduct in violation of the implied covenant. *See KSA Elecs., Inc. v. M/A-Com Tech. Sols., Inc.*, 2015 WL 4396477, at *2 n.1 (D. Mass. 2015) (determining resolution of an allegation of retaliatory termination required further factual development); *Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 258 (D. Mass. 2021) (finding a claim for breach of implied covenant based in part on allegations of unsuitable products for distribution and retaliatory termination for raising concerns about product quality); *A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transportation Auth.*, 479 Mass. 419, 434-35 (2018) (finding insufficient facts to prove defendant committed a breach of the implied covenant when the case did not "assert[] that the [defendant's] stated reason for terminating the contract concealed an illegitimate one"); *RLM Assocs. v. Carter Mfg. Corp.*, 356 Mass. 718 (1969) (holding a question of bad-faith termination was proper for a jury where termination was premised in part on a desire to avoid paying a commission, despite a provision that either party could terminate on 30-days notice); *Canha v. LaRoche*, 1996 WL 1186959, at *5 (Mass. Super. Aug. 12, 1996).

While Janz cannot recover on an obligation not contemplated by the provisions of the contractual relationship, there is, at a minimum, an eight-day period during which Janz may have sustained some degree of the damages it alleges from the termination. Furthermore, it is impossible on the present record to ascertain whether Philips's decisions to rescind Janz's ability to supply certain products pursuant to the authorized product lists or letters of supply did not cause damages within the meaning of the contractual obligations and parties' reasonable

9

expectations as to performance.

Of course, these issues have been raised in the context of a motion to dismiss, not after development of a factual record.[4]  Under the circumstances, however, the Court cannot find that there is no possibility that Janz can recover on a theory of breach of the implied covenant.  Accordingly, the motion to dismiss Count 1 will be denied.

### B.     Wrongful Termination

Count 2 alleges a claim for wrongful termination in violation of public policy under Massachusetts law.  "Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing [a] workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)."  *Smith-Pfeffer v. Superintendent Walter E. Fernald State Sch.*, 404 Mass. 145, 149-50 (1989).  For example, "a cause of action will lie when an employee is fired . . . for enforcing safety regulations for which she was responsible."  *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 810 (1991) (citing *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 416-17 (1988)).

The complaint alleges that Janz is entitled to redress because Philips terminated the reseller agreement in retaliation for its "repeated insistence that the MP2 products Philips supplied for Government customers be certified airworthy in accordance with Government requirements."  (Compl. ¶ 74).  That claim differs from the ordinary wrongful-termination claim in two senses:  the claim sounds in contract rather than tort, and plaintiff is a commercial entity, not an employee or individual.

---

[4] For that reason, the Court declines to consider matters outside the pleadings on this motion to dismiss. Fed. R. Civ. P. 12(d).

There is at least some support for the argument that a wrongful-termination claim can be based on contract, rather than tort. *See DeRose v. Putnam Mgmt. Co.*, 398 Mass. 205, 212 (1986); *Alford v. Elan Pharma, Inc.*, 1999 WL 1331236, at *2 n.1 (Mass. Super. Jan. 19, 1999) ("Wrongful termination claims can sound in either contract or tort."). However, in Massachusetts, a public policy exception to wrongful termination claim typically sounds in tort. *See United States ex rel. Lokosky v. Acclarent, Inc.*, 2023 WL 3457903, at *6 (D. Mass. May 10, 2023); *Ryan v. Holie Donut, Inc.*, 82 Mass. App. Ct. 633, 636 (2012).

In any event, plaintiff does not cite any case from Massachusetts indicating that the public-policy limitation on wrongful termination has been extended to commercial contracts. Other states have declined to do so. *See, e.g.*, *Bishop & Associates, LLC v. Ameren Corp.*, 520 S.W.3d 463, 468-70 (Mo. 2017); *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 325-26 (3d Cir. Pa Aug. 11, 2006); *Vista W., Inc. v. North Am. Philips Corp.*, 875 F.2d 319, *6 (9th Cir. 1989). Janz apparently argues it is an independent contractor, suggesting Massachusetts recognizes "circumstances 'where the law bars an employer from terminating an employee or independent contractor because of her exercise of a protected right.'" (Opp. at 12 (quoting *Marx*, 2002 WL 31662569, at *9)).

While Massachusetts has applied the public-policy limitation on wrongful termination to independent contractors in limited circumstances, such as where an employee is arguably misclassified as an independent contractor, there is no basis in the caselaw for extending the theory to a contract termination between two commercial entities. *See, e.g.*, *Slavin v. Xenon Corp.*, 1995 WL 808893, at *2 (Mass. Super. Jan. 5, 1995); *see also Marx*, 2002 WL 31662569, at *8-10. "Th[e SJC] consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule . . . into a rule that requires just

11

cause to terminate an at-will employee.'" *King v. Driscoll*, 418 Mass. 576, 582 (1994) (quoting *Smith-Pfeffer*, 404 Mass. at 150). That reasoning also militates against expanding the exception to the commercial context here.

Under the circumstances, the Court will not assume that Massachusetts courts would extend the exception to contracts between commercial entities. Accordingly, Count 2 for wrongful termination will be dismissed.

C.     **Violation of Chapter 93A**

Finally, Count 3 alleges that Philips's conduct "was unfair or deceptive within the meaning of [Mass. Gen. Laws ch. 93A,] §§ 2, 9, and 11, and was therefore unlawful." (Compl. ¶ 79). "Specifically, Philips's insistence that it was providing Janz certified airworthy MP2s for Government customers when it was not, and the termination of the Reseller Agreement [for plaintiff's] repeated insistence that MP2 products Philips stocked for Government customers be certified airworthy, were unfair or deceptive acts and practices." (Compl. ¶ 81).

As to the claim under § 9 of Chapter 93A, Philips asserts that the complaint does not state a claim because § 9 is applicable only in the consumer context, not commercial transactions. Janz does not dispute that contention in its opposition. "The § 9 private remedy is available only to a consumer, that is, a 'person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes.'" *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 701 (1975); *see Continental Ins. Co. v. Bahnan*, 216 F.3d 150, 156 (1st Cir. 2000) ("[S]ection 9 affords no relief to persons engaged in trade or commerce."); *Chaloupka v. Proximo Travel*, LLC, 2023 WL 5805994, at *3 n.2 (D. Mass. 2023). Accordingly, the motion to dismiss will be granted as to the claim under § 9 of Chapter 93A.

Section 11 of ch. 93A does extend to certain commercial transactions. *See* Mass. Gen. Laws ch. 93A, § 11. The statute provides that an action under § 11 can only be brought if "the

12

actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." *Id.* § 11.[5] A Chapter 93A claim must also allege a practice that (1) is within "the penumbra of some common-law, statutory, or other established concept of unfairness," (2) is "immoral, unethical, oppressive, or unscrupulous," and (3) "causes substantial injury to consumers," competitors, or other business entities. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005); *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975).

As an initial matter, Philips contends that the § 11 claim is barred by the statute of limitations for any claim that accrued before January 23, 2019. (Mem. at 13). The statute of limitations for such claims is four years after the cause of action accrues. Mass. Gen. Laws ch. 260, § 5A; *Kozikowski v. Toll Bros.*, 354 F.3d 16, 22 (1st Cir. 2003). Because the complaint was filed on May 9, 2023, Philips reasons that Janz cannot assert a Chapter 93A claim that accrued prior to January 23, 2019.[6] Janz did not respond to that argument in its papers.

Philips further contends that the § 11 claim should fail as a matter of law for three reasons. First, it contends that the complaint "fails to state a claim because [it] fails to allege conduct having an extortionate or coercive quality." (Mem. at 13). Second, it contends that because sales of uncertified MP2s did not cause Janz to lose money or property, the complaint fails to state a claim under § 11 based on those sales. (Mem. at 15-16). Finally, it contends that it fails to state a claim based on its alleged refusal to purchase inventory. (Mem. at 19).

---

[5] The complaint alleges, and Philips does not appear to contest, that the actions that are alleged to have violated Chapter 93A occurred primarily and substantially within the Commonwealth. (Compl. ¶ 80).

[6] That calculation applies the 106-day tolling of the statute of limitations due to the COVID-19 pandemic. *See Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338 (2021).

13

"It is well settled that '[a] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of commercial extortion or a similar degree of culpable conduct." *DMB Fin. LLC v. Symple Lending LLC*, 2022 WL 1805480, at *10 (D. Mass. 2022) (quoting *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000)). However, this action does not involve a simple breach of contract. *Speakman*, 367 F. Supp. 2d at 140 ("[C]ourts have held that claims of violation of the implied covenant of good faith and fair dealing are not simple breach of contract claims for purposes of Chapter 93A."); *see Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013).

It is also "well settled that a breach of the implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice for the purposes of [Chapter] 93A." *New Kappa City Constr. v. Nat'l Floors Direct Inc.*, 2011 Mass. App. Div. 249, at *2 (Dist. Ct. 2011); *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 634–35, (2008) ("An implied warranty claim and a [ch.] 93A claim are based on the same economic theory of injury and the same set of alleged facts, they should survive or fail under the same analysis."); *see also Massachusetts Emps. Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995); *Tufankjian v. Rockland Tr. Co.*, 57 Mass. App. Ct. 173, 179 (2003); *Trent Partners & Assocs., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 106-07 (D. Mass. 1999) ("having found a triable issue of fact with respect to the plaintiffs' claims for violation of the implied covenant of good faith and fair dealing, I cannot say as a matter of law that a similar claim under Chapter 93A is outside of that act's definition"). "Inherent in such [violation of the implied covenant] claims is an element of either bad faith and improper motive or a breach of fair dealing . . . that clearly falls within established common law . . . concept[s] of unfairness." *Speakman*, 367 F. Supp. 2d at 140 (internal citations omitted).

While extortionate or coercive conduct might be one form of actionable conduct, it is not

the only form. *See Putluri v. FSSI Acquisition, Inc.*, 637 F. Supp. 3d 1, 6 (D. Mass. 2022) ("Courts in Massachusetts have described 'commercial extortion' as one category of actionable, unfair conduct."); *H1 Lincoln, Inc. v. South Washington St., LLC*, 489 Mass. 1, 14-15 (2022) (describing commercial extortion as "an established category of unfair conduct under [Mass. Gen. Laws ch.] 93A, § 11"); 52 MASS. PRAC., LAW OF CHAPTER 93A § 4.10 (describing Chapter 93A unfairness test and "commercial extortion" as a paradigm or model). Therefore, the failure to allege extortionate conduct, under the circumstances, is not dispositive.

Conduct motivated by retribution has been found actionable under § 11. *See Kattar v. Demoulas*, 433 Mass. 1, 12-13 (2000) (holding a lawful foreclosure action was prohibited under Chapter 93A because it was motivated by retaliation for the refusal of a witness to testify); *Sensitech Inc.*, 548 F. Supp. 3d at 259; *cf. Buster v. George W. Moore, Inc.*, 438 Mass. 635, 650 (2003); *B.W.P. Distributors, Inc. v. OE Plus, Ltd.*, 2009 WL 1154102, at *9 (S.D.N.Y. 2009); *Halper v. Demeter*, 34 Mass. App. Ct. 299, 303 (1993).

Under the circumstances, the conduct alleged here plausibly falls within "the penumbra of some common-law, statutory, or other established concept of unfairness" and "immoral, unethical, oppressive, or unscrupulous" conduct. *Massachusetts Eye & Ear Infirmary*, 412 F.3d at 243; *PMP Assocs.*, 366 Mass. at 596. That is sufficient, particularly given that "unfair or deceptive conduct is best discerned 'from the circumstances of each case.'" *Kattar*, 433 Mass. at 14 (quoting *Commonwealth v. DeCotis*, 366 Mass. 234, 242 (1974)).

As to damages, Janz concedes that it is not seeking damages under Chapter 93A based on the sale of uncertified MP2s nor the refusal to repurchase inventory. (Opp. at 18). Rather, it seeks damages resulting from the wrongful termination, including lost profits. That is sufficient, for present purposes, to allege a claim for damages under Chapter 93A. *See Massachusetts Eye*

15

*& Ear Infirmary*, 412 F.3d at 243; *PMP Assocs.*, 366 Mass. at 596; *H1 Lincoln, Inc.*, 489 Mass. at 27.

Accordingly, the motion to dismiss Count 3 will be denied.

## IV. Conclusion

For the foregoing reasons, the motion of defendant Philips North America LLC d/b/a Philips Healthcare is GRANTED in part and DENIED in part, as follows: the claims for wrongful termination (Count 2) and violation of Mass. Gen. Law ch. 93A, § 9 (Count 3, in part) are DISMISSED and the motion is otherwise DENIED.

**So Ordered.**

Dated:  February 12, 2024

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court